UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| DONNA HUNTER, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 5: 21-066-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| CORIZON HEALTH, INC., et al., | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendants. | ) | |

\*\*\*　\*\*\*　\*\*\*　\*\*\*

Plaintiff Donna Hunter claims that she was wrongfully discharged by her employer, a medical-care provider at a federal prison, after she expressed concerns about the quality of care provided to the inmates. She initiated this action to recover from both her employer and her direct supervisor, Defendant Kristin Fryman. But Fryman argues that she cannot be held liable for Hunter's termination as a matter of law, and she has moved to dismiss the claims. The motion will be granted for the reasons outlined below.

**I.　BACKGROUND**

Hunter initiated this action in Fayette Circuit Court on January 9, 2021. [Record No. 1-1] The defendants were identified as Corizon Health, Inc., Corizon, LLC,[1] and Fryman. The Corizon defendants removed the action to this Court on March 5, 2021. [Record No. 1] At the time of removal, they acknowledged the lack of diversity between Hunter and Fryman but

---

[1] Corizon Health, Inc., is the sole member of Corizon, LLC. [Record No. 1, ¶ 4] For this reason, and because the corporate relationship between the entities is not relevant here, the Court will refer to these entities collectively as "the Corizon defendants" or by the shorthand "Corizon."

nevertheless argued that Fryman "has been fraudulently joined by Plaintiff in an effort to defeat diversity jurisdiction, and [her] citizenship . . . must be ignored." [*Id.* at ¶ 5] The Corizon defendants further indicated that Fryman would be filing a motion to dismiss the claims against her. [*Id.* at ¶ 6 n.1] That motion was filed subsequently. [Record No. 5]

According to the Complaint,[2] Hunter is a registered nurse that was employed as the Director of Nursing at the Fayette County Detention Center ("FCDC") in Lexington, Kentucky. [Record No. 1-1, ¶ 8] Hunter's employer, Corizon, provides medical services at FCDC. [*Id.* at ¶¶ 8-9] Fryman is the Health Services Administrator at FCDC; she was also Hunter's supervisor. [*Id.* at ¶¶ 11-12]

Early in her employment, Hunter became concerned about the medical care being provided to inmates at FCDC, and she voiced these concerns to Fryman. [*Id.* at ¶¶ 13-14] Very soon thereafter, Hunter began reporting her concerns to Corizon's upper-level managers. [*Id.* at ¶ 15] In fact, she shared her concerns in a meeting with Corizon's Chief Executive Officer in October 2019. [*Id.* at ¶ 16]

In November 2019, Hunter gave testimony in a deposition that was "highly critical of the care provided to [an inmate] at FCDC, as well as the medical care offered generally to inmates housed at FCDC by Corizon-employed medical staff." [Record No. 1-1, ¶ 18] Shortly after this deposition, Hunter alleges that she was "summoned" to a hotel room where "a Corizon attorney interrogated her for approximately three hours about her concerns with medical conditions at FCDC." [*Id.* at ¶ 20]

---

[2]  At this stage, "[t]he Court views the complaint in the light most favorable to the plaintiff and must accept as true all well-pleaded factual allegations contained within" the Complaint. *Red Hed Oil, Inc. v. H.T. Hackney Co.*, 292 F. Supp. 3d 764, 772 (E.D. Ky. 2017) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

Hunter was terminated by Corizon on January 13, 2020. [Record No. 1-1, ¶ 22] Hunter alleges that, throughout her employment, Fryman "presented [her] in a poor light" and "recommended terminating [her]." [*Id.* at ¶ 21] Her termination was allegedly the "direct result" of Hunter's complaints. [*Id.*] She also contends that FCDC was "under the direction and control" of Fryman, who "determin[ed] that [Hunter] could not or should not work for Corizon . . . ." [*Id.*]

## II. STANDARD OF REVIEW

Rule 12 of the Federal Rules of Civil Procedure allows a party to move the court to dismiss a complaint that "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible upon its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court must proceed on the assumption that well-pleaded allegations are true, even if they strike the Court as improbable. *Id.* at 556 (2007). While the Court need not accept legal conclusions or unwarranted factual inferences, the complaint must be construed in the plaintiff's favor. *Sharp v. Ingham Cty.*, 23 F. App'x 496, 498 (6th Cir. 2001). However, the Court will dismiss a complaint if the factual allegations are insufficient "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

## III. LEGAL ANALYSIS

Hunter's Complaint seeks damages for common-law wrongful termination and violations of Kentucky Revised Statutes ("KRS") § 216B.165. Fryman moves to dismiss both claims because, she argues, they fail as a matter of law. On the wrongful termination claim, she contends that "'a wrongful termination claim may only lie against [a p]laintiff's employer,

not against [a] supervisor.'" [Record No. 5-1, p. 5 (quoting *Temple v. Pflugner*, 866 F. Supp. 2d 735, 744 (E.D. Ky. 2011) (quotation omitted))] Fryman notes that the Complaint identifies her as Hunter's supervisor and, therefore, the wrongful termination claim fails as a matter of law.

Hunter's response does not contest the motion to dismiss the wrongful termination claim against Fryman. And as Fryman points out, the Court could grant the motion on this basis alone. [Record No. 14, p. 2]; *see Scott v. State of Tenn.*, 878 F.2d 382 (6th Cir. 1989) (unpublished table decision) ("[I]f a plaintiff fails to respond or to otherwise oppose a defendant's motion, then the district court may deem the plaintiff to have waived opposition to the motion."). But even if Hunter had responded, Fryman is correct that the wrongful termination claim fails as a matter of law.

This undersigned has held previously that "wrongful discharge claims cannot be asserted against individual employees or supervisors" under Kentucky law. *Meads v. Lexington-Fayette Urb. Cty. Gov't*, 2013 WL 6910224, at *5 (E.D. Ky. Dec. 31, 2013). As a judge in the Western District of Kentucky observed, "[a]lthough supervisors appear to be liable for other torts in employment contexts (outrage, intentional infliction of emotional distress, defamation), the Court can find no Kentucky case in which a plaintiff successfully asserted a claim for wrongful discharge against an individual supervisor." *Lorson v. Wal-Mart Stores, Inc.*, 2005 WL 1287421, at *2 (W.D. Ky. May 31, 2005). Thus, Hunter's common-law wrongful termination claim against Fryman fails as a matter of law.

Admittedly, this inquiry collapses with the analysis of the statutory claim to an extent. Kentucky recognizes a claim of common-law wrongful termination where an aggrieved plaintiff shows that his or her discharge was "contrary to a fundamental and well-defined

public policy as evidenced by . . . a constitutional or statutory provision . . . ." *Grzyb v. Evans*, 700 S.W.2d 399, 401 (Ky. 1985). And the Court of Appeals of Kentucky has held that terminating an employee for reporting poor medical care "would violate the stated public policy [in KRS § 216B.165] to ensure safe health-care facilities, thereby meeting the elements of common-law wrongful termination." *Foster v. Jennie Stuart Med. Ctr., Inc.*, 435 S.W.3d 629, 635 (Ky. Ct. App. 2013). In *Foster*, the court affirmed dismissal of two plaintiffs' common-law wrongful termination and statutory claims. *Foster*, 435 S.W.3d at 636-37. It explained:

> We also hold that the individual appellees were properly dismissed as to the claim for violating KRS 216B.165(3) because that statute only applies to health-care facilities and not individual employees. KRS 446.070, the statute used by Foster and Oliver in seeking a civil remedy for the violation of the whistleblower statute, allows recovery from an "offender" which, here, is the health-care facility. This same reasoning applies to the common-law wrongful termination claim because it is based on KRS 216B.165(3). In other words, KRS 216B.165(3) is the statute the common-law wrongful termination claim is governed by and only applies to health-care facilities. These claims, as a matter of law, were properly dismissed.

*Id.* Thus, the Court's resolution of the statutory claim could arguably impact whether Fryman's wrongful termination claim has any chance of success. *But see MacGlashan v. ABS Lincs KY, Inc.*, 84 F. Supp. 3d 595, 602 (W.D. Ky. 2015) (finding that KRS § 216B.165 does not *preempt* a common-law wrongful discharge claim because it provides no remedy).

Fryman relies on *Foster* to argue that there is no individual liability under KRS § 216B.165. [Record No. 5-1, p. 3] That Section provides in full that:

> (1) Any agent or employee of a health care facility or service licensed under this chapter who knows or has reasonable cause to believe that the quality of care of a patient, patient safety, or the health care facility's or service's safety is in jeopardy shall make an oral or written report of the problem to the health care facility or service, and may make it to any appropriate private, public, state, or federal agency.

(2) Any individual in an administrative or supervisory capacity at the health care facility or service who receives a report under subsection (1) of this section shall investigate the problem, take appropriate action, and provide a response to the individual reporting the problem within seven (7) working days.

(3) No health care facility or service licensed under this chapter shall by policy, contract, procedure, or other formal or informal means subject to reprisal, or directly or indirectly use, or threaten to use, any authority or influence, in any manner whatsoever, which tends to discourage, restrain, suppress, dissuade, deter, prevent, interfere with, coerce, or discriminate against any agent or employee who in good faith reports, discloses, divulges, or otherwise brings to the attention of the health care facility or service the circumstances or facts to form the basis of a report under subsections (1) or (2) of this section. No health care facility or service shall require any agent or employee to give notice prior to making a report, disclosure, or divulgence under subsections (1) or (2) of this section.

(4) All reports, investigations, and action taken subject to this chapter shall be conducted in a manner that protects and maintains the confidentiality of patients and personnel and preserves the integrity of data, information, and medical records.

(5) All health care facilities and services licensed under this chapter shall, as a condition of licensure, abide by the terms of KRS 216B.155 and this section.

(6) No agent or employee of a health care facility or service shall file a report under subsection (1) or (2) of this section in bad faith and shall have a reasonable basis for filing a report.

KRS § 216B.165. The statute "imposes a duty upon any employee or agent of a healthcare facility to report concerns regarding patient care and safety to the healthcare facility." *Hughes v. Norton Healthcare, Inc.*, No. 2019-CA-0222-MR, 2020 WL 7295190, at *7 (Ky. Ct. App. Dec. 11, 2020) (citing KRS § 216B.165(1)). It further "dictates that healthcare facilities are prohibited from retaliating against any employee or agent who makes such a report in good faith." *Id.* (citing KRS § 216B.165(3)).

Although the statute itself provides no remedy for a violation, "the remedy is found in KRS 446.070, which states that '[a] person injured by the violation of any statute may recover

from the offender such damages as he sustained by reason of the violation, although a penalty or forfeiture is imposed for such violation.'" *HBR Madisonville, LLC v. Attebury*, No. 2019-CA-1397-MR, 2021 WL 1583837, at *3 (Ky. Ct. App. Apr. 23, 2021) (embedded quotation omitted). And, as reproduced previously, the Court of Appeals of Kentucky has held that the "offender" contemplated by the statute "is the health-care facility." *Foster*, 435 S.W.3d at 637.

Fryman argues that the statute only supports a claim against a healthcare facility for retaliating against a whistleblower-employee. [Record No. 5-1, p. 4] Language in *Foster*—"th[e] statute only applies to health-care facilities and not individual employees"—provides strong support for her position. 435 S.W.3d at 636. But Hunter argues that the *Foster* plaintiffs cited the wrong provision of KRS § 216B.165. She states that *Foster* "only bars individual liability under [KRS § 216B.165(3),] which seems clearly designed to apply only to the health care entity and not individuals." [Record No. 9, p. 5] And she contends that it "has absolutely no application to any other subsection" of the statute. [*Id.*]

To be sure, Hunter's argument would give effect to all the statute's subsections. After all, as Hunter points out, the statute sets forth duties for employees in subsection 1, supervisors in subsection 2, and healthcare facilities in subsection 3. [*Id.* at p. 6] And here, she argues, Fryman violated her statutorily-imposed duty to "investigate the problem, take appropriate action, and provide a response to the individual reporting the problem within seven (7) working days." [*Id.* at p. 7 (citing KRS § 216B.165(2))] This breach of duty allegedly "formed the beginning of the chain of events resulting in retaliation by Corizon in violation of Subsection (3) . . . ." [*Id.* at p. 8]

But the Court resists such a narrow reading of *Foster*. As mentioned, the plaintiffs there brought claims against their employer, a healthcare facility, and individual supervisors.

*Foster*, 435 S.W.3d at 632-33. The plaintiffs contended that the individual supervisors tasked with investigating their reports had not properly done so. *Id.* at 632. The Court of Appeals of Kentucky categorically held that the individual supervisors could not be held liable for common-law wrongful termination or retaliation in violation of KRS § 216B.165. *Id.* at 636-37. And while it is true that the court cited subsection 3, it did not expressly limit its analysis to that subsection. In fact, it frequently referred to the entire statute. *See id.* at 635 (referring to Section 216B.165 as "the health-care facility whistleblower statute"); *id.* at 637 (referring generally to "violation[s] of the whistleblower statute").

Additionally, nothing about the statutory scheme compels such a narrow reading. Considered broadly, Section 216B is intended to "improve the quality and increase access to health-care facilities, services, and providers, and to create a cost-efficient health-care delivery system for the citizens of the Commonwealth." KRS § 216B.010; *Foster*, 435 S.W.3d at 635. Section 165 carries out this intention by requiring employees to report concerns, requiring facilities to investigate those concerns, and prohibiting a facility from taking any adverse action against a reporting employee. This scheme details a mechanism that healthcare facilities must implement to protect patients by protecting concerned employees. In fact, subsection 3 protects both disclosing employees, like Hunter, and the supervisory employees tasked with investigating those disclosures, like Fryman. KRS § 216B.165(3) (protecting employees that "mak[e] a report, disclosure, or divulgence under subsections (1) or (2)"). The statute's penalty for non-compliance is also revealing: it is the loss of a healthcare facility's *license*. KRS § 216B.165(5). Thus, Kentucky courts have applied its generally civil-remedy provision, KRS § 446.070, to *offenders* of the whistleblower statute—*i.e.* healthcare facilities. *See HBR Madisonville*, 2021 WL 1583837, at *3.

Changing the facts slightly illustrates the point. If Hunter had not been terminated, there is no question that she would not have a viable claim against Fryman. This is because the underlying premise of this suit is that she was wrongfully terminated by Corizon. And, as previously explained, KRS § 216B.165 is concerned with retaliatory employment actions against employees by healthcare facilities. In short, Hunter's efforts to hold Fryman liable for her termination find no support in the statutory scheme. Hunter implicitly recognizes as much: in her own words, the actions Fryman failed to take (allegedly in violation of her statutory duties) "forced [Hunter] to undertake subsequent actions reporting to upper management." [Record No. 9, p. 8] Well after these reports, she was terminated. [Record No. 1-1, ¶ 15 (indicating she began reporting to upper management in April 1029), ¶ 22 (indicating she was terminated in January 2020)] Thus, the fact that Fryman's actions would not independently give rise to a cause of action is another reason to conclude that she may not be held individually liable for Hunter's termination.

Based on the foregoing analysis and discussion, it is hereby

**ORDERED** that Defendant Kristyn Fryman's motion to dismiss [Record No. 5] is **GRANTED**.

Dated: May 18, 2021.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky